# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:09CR00011 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL WAYNE CARROLL**, | ) | By:  James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this Opinion, I set forth the reasons for the defendant's sentence.[1]

The defendant, Michael Wayne Carroll, pleaded guilty without a plea agreement[2] to charges of conspiracy to possess fictitious obligations, 18 U.S.C.A. § 371 (West 2000) (Count One of the Indictment); possession of fictitious obligations, 18 U.S.C.A. § 514(a)(2) (West 2000) (Counts Two through Four); and possession of counterfeit money, 18 U.S.C.A. § 472 (West Supp. 2009) (Count Five).

---

[1]  The court must "state in open court" its reasons for the sentence, 18 U.S.C.A. § 3553(c) (West Supp. 2009),  and I recited these reasons orally at the defendant's sentencing.

[2]  Defendants in this court frequently plead guilty without plea agreements with the government, where they receive no significant concession from the government and in order to avoid the routine insistence by the United States Attorney's office that plea agreements include defendants' appeal waivers, in spite of the fact that the government retains its right to appeal sentences.

Following Carroll's guilty plea, a probation officer of this court prepared the Presentence Investigation Report ("PSR"), which calculated the advisory sentencing guideline range. According to the PSR, the defendant had a Total Offense Level of 19 and a Criminal History Category of IV, resulting in a advisory guideline range of 46 to 57 months of imprisonment. The defendant objected to the inclusion of a prior conviction in the defendant's criminal history calculation. In addition, the defendant sought a downward departure under U.S. Sentencing Guideline Manual ("USSG") § 5K2.23 (2009), which would award him credit for a prior fully-served state sentence. The government sought a sentence that varied above the guideline range based upon the circumstances of the offenses, while the defendant sought a variance below the guideline range because of his background, characteristics, and rehabilitation.

The defendant is 30 years old. He is separated from his wife and has two young children who reside with their mother. He left school before graduation, but later obtained his GED while a member of the Job Corps. He has worked in a factory and as a fast food restaurant supervisor, but has no specialized training or skills. The defendant reports a history of substance abuse, including addiction to cocaine and pain medication.

The defendant has a lengthy criminal history, including a conviction for assault and battery when he was 21 years old; multiple convictions for larceny when he was

23, in which he stole numerous scooters, bicycles, and other movable objects from persons in the community; convictions for possession of forged instruments when he was 26; and conviction for theft by deception when he was 27.

The instant offenses were brought to light in 2007 when state law enforcement authorities executed a search warrant on Carroll's residence in Lee County, Virginia, and discovered Nigerian money, counterfeit postal and commercial money orders, and counterfeit U.S. currency. The total face amount of the counterfeit items seized at that time was $69,850. Later, an additional $17,298.09 in counterfeit items was recovered from various banks and businesses where the items had been cashed.

The ensuing investigation by authorities, including the U.S. Secret Service, showed that Carroll had been involved in a year-long Nigerian fraud scheme during which he had received counterfeit money orders and currency from Nigeria and in turn had enlisted numerous accomplices, including drug abusers who were paid with drugs, to cash the items for him. Carroll then sent the cash proceeds back to the Nigerians, keeping a portion—perhaps 30 percent—for himself. According to a friend, there was a pile of counterfeit money orders in Carroll's home, so many that they were dropped on the floor and used as dustpans. According to another informant, Carroll received packages from the Nigerians about twice a month, with 20 to 25 counterfeit items included each time.

One of Carroll's accomplices was a long-distance truck driver. Carroll gave the accomplice $5000 to $10,000 worth of counterfeit money orders to cash on each trip. When the truck driver lost his license and could no longer drive, he and Carroll traveled by bus in order to cash the money orders, in one case being gone for about ten days.

The Secret Service case agent testified at the sentencing hearing that it was not possible to find all of Carroll's probable victims because of the nationwide scope of his activities. Names and addresses of persons from across the country were found in the search of Carroll's home and the agent testified that he was able to track down only a few of them; some that he did find were afraid of Carroll because he had threatened them with harm if they testified against him. The agent expressed the opinion that the dollar amount of money orders actually recovered "grossly underestimated" the true amount passed as part of Carroll's scheme.

While the court must begin the sentencing process by "correctly calculating the applicable Guidelines range," *Gall v. United States*, 552 U.S. 38, 49 (2007), I may reject a sentence within the range "because a sentence within the Guidelines fails to reflect the other [18 U.S.C.] § 3553(a) factors or 'because the case warrants a different sentence regardless.'" *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)).

In imposing a sentence, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2009). Accordingly, the court is required to impose a sentence "sufficient, but not greater than necessary," to comply with these purposes. 18 U.S.C.A. § 3553(a).[3]

The defendant objected to the use of one of Carroll's prior state convictions in the calculation of his criminal history. That Kentucky conviction, for theft by deception, occurred when Carroll advertised on the Internet that he had a Yorkshire puppy for sale. The victim agreed to purchase the puppy for $1500 and sent Carroll the money. No puppy was received. The offense occurred on May 1, 2006, and Carroll was sentenced on August 6, 2007, to two years of imprisonment.

---

[3] In addition, the court must explain the reasons for its sentence, regardless of whether the sentence is above, below, or within the advisory guideline range. *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). This explanation must contain an "'individualized assessment' based on the particular facts of the case before [the court]." *Id.* (quoting *Gall*, 552 U.S. at 50).

In the PSR, the probation officer scored this sentence with three criminal history points. Carroll argued that he should receive no criminal history points, because his conduct was relevant conduct to the present offenses. *See* USSG § 4A1.2 cmt. n.1 (excluding prior sentences that involve relevant conduct to the instant offense). To be relevant conduct to the present offenses, however, the conduct must be "part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). Although occurring during the same general period of time as the present offenses, this crime lacked a common victim, accomplice, purpose, or modus operandi as Carroll's present scheme. Other than being fraudulent, and being fueled by greed, the offenses have no connection or similarity. *See United States v. Hodge*, 354 F.3d 305, 314 n.3 (4th Cir. 2004) (noting that two drug transactions that both involved cocaine does not of itself constitute level of similarity supporting finding of relevant conduct). Accordingly, the objection is without merit.

The defendant was also convicted in Kentucky for the possession of a forged check and two forged money orders with the total value of $3200, which he cashed. The possession occurred in March and April of 2006. Carroll was sentenced by the state court on August 6, 2007, to a term of imprisonment. He has fully served that sentence, which represented 34 months of incarceration. That sentence was not used

by the probation officer in scoring the defendant's criminal history. Nevertheless, Carroll requests that the court give him credit for that sentence by reducing any sentence imposed in this case by 34 months.

The Sentencing Guidelines authorize a downward departure based on a prior term of imprisonment where a defendant has completed serving the term of imprisonment and USSG § 5G1.3 would have provided an adjustment had the term of imprisonment been undischarged. USSG § 5K2.23. Section 5G1.3 provides that if a prior term of imprisonment resulted from another offense that (1) is relevant conduct to the instant offense of conviction and (2) was a basis for an increase in the present offense level, the court must adjust the sentence imposed for any period of imprisonment already served and run the sentence imposed concurrently with the remainder of the undischarged term of imprisonment. USSG 5G1.3(b).

I find that the Kentucky offense was not a basis for an increase in the offense level for the instant offences of conviction and thus 5K2.23 does not apply. Nevertheless, even if it did apply, I would not exercise my discretion to grant a downward departure. Section 5K2.23 itself provides that any such departure authorized should be fashioned to achieve a reasonable punishment for the offenses.[4]

---

[4] While 5G1.3 appears to require an adjustment and concurrent sentence for a prior term of imprisonment not fully served, *see United States v. Fuentes*, 107 F.3d 1515, 1521-27 (11th Cir. 1997), a departure under 5K2.23, where the prior sentence has been fully

For the reasons that I will explain, an appropriate punishment in this case does not include a reduction for the time served for the Kentucky conviction.

I find that a sentence within the advisory guideline range in this case does not reflect the § 3553(a) factors and the circumstances warrant a sentence variance above that range.

I agree with the government that the loss amount attributable to the defendant underestimates his actual harm. I find that it is probable that there are more victims who have not been identified because of the scope and nature of the defendant's scheme. While that loss cannot be determined precisely enough to apply to the advisory guideline calculation, the facts are sufficiently clear to allow the court to consider a greater loss in judging the seriousness of the defendant's conduct.[5]

Moreover, the fact that the defendant utilized vulnerable persons as accomplices to his scheme increases the serious nature of his conduct. Some of the persons that Carroll used to pass the counterfeit money orders were addicted to drugs

---

completed, is permitted but not required. *See* Thomas W. Hutchison et al., *Federal Sentencing Law and Practice* 1722 (2009).

    [5] The defendant's offense level under the guidelines was calculated using a loss of more than $70,000. *See* USSG § 2B1.1(b)(1)(E). Had the loss been calculated at the next higher level, more than $120,000, his guideline range would have been 57 to 71 months of imprisonment. *See* USSG § 2B1.1(b)(1)(F).

and were paid in drugs.  In addition, as detailed in the PSR, Carroll used threats of violence to intimidate some of his accomplices, making his conduct more serious.

On Carroll's behalf, it is argued that he should receive a reduced sentence because "he has a solid work background and work ethic."  (Sentencing Mem. 4.) The facts belie that contention.  While Carroll has worked at lawful jobs in his life, his criminal history shows that his principal "ethic" is simply greed at any cost to his victims.  It is also contended that his stay in a Kentucky prison has shown that he has been rehabilitated through work, drug courses and Bible study.  While I hope that is true, his past history, and the serious nature of these offenses, convinces me that the public safety requires a lengthy term of imprisonment in order to incapacitate the defendant from committing further financial crimes and to deter him from such conduct.

For these reasons, I find that a sentence of 72 months of imprisonment is appropriate.

DATED: March 8, 2010

/s/ JAMES P. JONES
Chief United States District Judge